UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| HORIZON ORGANIC DAIRY, LLC, a Delaware corporation,<br><br>*Plaintiff*,<br><br>vs.<br><br>ORGANIC WEST MILK, INC., a California corporation, and WILLIAM MATTHEW WOODIE, an individual,<br><br>*Defendants*. | § § § § § § § § § § § § § § | Cause No. _____ |

**COMPLAINT AND JURY DEMAND**

Plaintiff Horizon Organic Dairy, LLC, ("Horizon"), by and through its attorneys, for its Complaint and Jury Demand alleges and avers the following:

## NATURE OF THE ACTION

1. This case arises from the intentional interference with, and breach of, a contract for the sale of organic milk produced by Jonathan Dietrich's ("Dietrich") dairy to Horizon for a five-year period ending July 15, 2019.

2. In 2012, Horizon contracted with Defendant William Matthew Woodie ("Woodie") to buy all of the organic milk produced at his dairy, Keystone Dairy, Inc. ("Keystone Dairy"), in Hartley, Texas. Woodie later leased Keystone Dairy's land, facilities and livestock (leased from another third party) to Dietrich, and on April 1, 2014, having represented to Horizon that he was selling his dairy and livestock and getting out of the dairy farming business, Horizon agreed to release Woodie from his contract. However, Horizon only agreed to do so on the condition that Dietrich would enter into a contract with Horizon, and ensure there would be no interruption in the dairy's sale of milk to Horizon.

3. Dietrich and Horizon entered into an agreement in July 2014.

4. As a part of his release from the Horizon contract, Woodie agreed to repay a portion of the Start-up Advances (defined below) Horizon had paid to him in 2012.

5. Neither Dietrich nor Woodie honored or performed their respective contracts with Horizon.

6. Specifically, within a few months of Dietrich's contract with Horizon, Woodie, Dietrich, Dietrich's wife, Melissa Dietrich ("Mrs. Dietrich"), and another local farmer, Brad Green ("Green"), colluded and conspired with Defendant Organic West Milk, Inc. ("Organic West"), to breach the milk purchasing contract between Dietrich and Horizon.

7. As a result of Dietrich's overt breach of his contract with Horizon, including what appear to be sham transactions to transfer Keystone Dairy and its operations to a new entity, American AG Ventures, Inc. ("American AG"), American AG—using the same cows, facilities, land, and management as Keystone Dairy—entered into a new contract with Organic West to sell organic milk that was, and is, contractually obligated to Horizon.

8. In addition, Woodie not only tortiously interfered with the contract between Dietrich and Horizon, he also failed to reimburse Horizon for the Start-up Advances in breach of the unambiguous terms of his release.

9. The interference with and breach of its contract has and will continue to cause significant damages to Horizon. Horizon, therefore, brings this action to vindicate its contract rights and be compensated for the damages it has and will continue to incur as a result of Defendants' actions.

## PARTIES

10. Horizon Organic Dairy, LLC, is a Delaware limited liability company in good standing, with its principal place of business is 12002 Airport Way, Broomfield, CO 80021.

11. Organic West Milk, Inc., is a California corporation. Upon information and belief, Organic West's principal place of business is 129 West Main Street, Ripon, CA 95366.

12. Upon information and belief, William Matthew Woodie is a resident and citizen of the State of Texas, whose address is P.O. Box 1600, Dumas, TX 79029.

## JURISDICTION AND VENUE

13. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because the matter in controversy exceeds the sum of $75,000, the parties are citizens of different states, and there is complete diversity between Horizon and Defendants.

14. This Court has personal jurisdiction over Defendants as each of them conducted or directed business, and directed and committed tortious acts against Horizon, in Hartley County, Texas, which is in this judicial district.

15. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to this action occurred in Hartley County, Texas, which is in this judicial district.

## FACTUAL ALLEGATIONS

### A.   The Organic Milk Market

16. Horizon, which has been in the business of selling organic dairy nationwide for more than 20 years, purchases organic milk from independent suppliers under contracts called "Milk Purchase Agreements" (each, an "MPA").

17. Pursuant to federal government regulations of the production of organic milk, the process of qualifying a dairy farm as organic is time consuming and expensive, and there are several barriers to entry into the marketplace. Accordingly, there are a limited number of organic milk producers nationwide.

18. Demand for organic dairy products has steadily grown. Organic dairy sales were approximately $5.1 billion in 2014 - double the sales just a decade ago – and demand for organic milk is at an all-time high.

19. Because the organic milk supply in the United States is tight, distributors like Horizon and Organic West compete for organic milk suppliers in Texas and nationally. Milk purchase contracts, therefore, play a critical role in assuring organic milk supply to distributors.

### B. Horizon's Agreements with Woodie

20. Effective November 1, 2012, Horizon entered into a five-year MPA with Woodie to purchase organic milk produced at the Keystone Dairy. Approximately one year later, in October 2013, Woodie executed a dairy cow lease with Sunshine Heifers pursuant to which he leased 400 Holstein heifers for a 50-month term.

21. Horizon agreed to provide Woodie with certain advance payments as start-up bonuses totaling $176,000.00 (the "Start-up Advances").

22. In or about April 2014, Woodie contacted Horizon about terminating his contract, representing that he was exiting the organic milk business, that the Dietrichs would be taking over Keystone Dairy, and that the Dietrichs would enter into an MPA with Horizon.

23. Having been assured there would be no interruption in the business at the Keystone Dairy, and after Horizon and Dietrich executed their own MPA, Horizon agreed to release Woodie from his MPA pursuant to the terms set forth in the written agreement they signed on or about August 1, 2014 (the "Release").

24. Under the Release, Woodie was required to repay Horizon $105,600.00 of the Start-up Advances Horizon had paid him in 2012, in two tranches. First, Woodie agreed to repay $50,600.00 upon execution of the Release. Second, Woodie agreed to repay the balance due

either (i) under an installment plan, if he entered into another MPA with Horizon, or (ii) in a lump sum of $55,000.00 by September 15, 2014, if did not.

25. Woodie also agreed to provide Horizon with a right of first refusal to purchase any organic milk he produced within a 600 mile radius of Keystone Dairy, which right runs until October 31, 2017.

26. Notwithstanding Horizon's demand, Woodie did not repay the Start-up Advances as required under the Release.

### C. Horizon's Agreement with Dietrich

27. Notwithstanding his contract with Horizon, Woodie began transferring Keystone Dairy and its operations to the Dietrichs in or about January 2014. The Dietrichs signed a commercial lease with Woodie for the land and facilities effective on or about January 1, 2014 (for a term ending June 30, 2016), assumed Woodie's cow lease from Sunshine Heifers, and then took over operations of Keystone Dairy on or about April 1, 2014.

28. Horizon did not receive notice of any changes with respect to Keystone Dairy's ownership or operations until the following month.

29. Then, on July 15, 2014, Horizon and Dietrich executed an MPA with respect to the production and supply of organic milk from the Keystone Dairy (the "Dietrich MPA").

30. Under the Dietrich MPA, Dietrich agreed to sell Horizon a base volume of milk, and also gave Horizon a right of first refusal to purchase any milk his dairy produced above that volume. Dietrich was expected to sell Horizon 2.1 million gallons of organic milk monthly at a cost of $26.4 million.

31. The Dietrich MPA has a five-year term, through July 15, 2019, which Dietrich may only terminate upon 180 days written notice to Horizon before that term expires.

32.     The Dietrich MPA does not permit Dietrich to terminate upon an exit from the organic dairy farm business.

**D.     Defendants' Interference with the Dietrich MPA**

33.     Two months into his contract with Horizon, Dietrich complained to Horizon that feed costs were preventing Keystone Dairy from making a sustainable profit. In response, on October 1, 2014, Horizon amended the Dietrich MPA and guaranteed Dietrich, among other incentives, a higher, flat pay price.

34.     In August or September 2014, just two months after he entered into the contract with Horizon, Dietrich secretly spoke with Brad Green, a neighboring farmer who produced organic feed, about taking over Dietrich's organic dairy operation. Dietrich did not inform Horizon of those discussions.

35.     In early to mid-November 2014, Green and Mrs. Dietrich formed American AG to take over Keystone Dairy. Dietrich informed Green about the Dietrich MPA, but also advised Green that the contract would not be transferred to American AG upon its purchase of Keystone Dairy.

36.     Upon information and belief, American AG has no assets or capitalization. Furthermore, there is no written contract or agreement selling or otherwise transferring Keystone Dairy to American AG, or, upon information and belief, any exchange of consideration.

37.     Nevertheless, in November 2014, American AG took over the business and operations of Keystone Dairy, under Dietrich's management.

38.     American AG (i) produces organic milk at the same facility and upon the same land on which Keystone Dairy operated; (ii) uses the same cows that Keystone Dairy used to produce organic milk for Horizon under the Dietrich MPA; (iii) assumed the lease for the cows

from Dietrich; and (iv) operates, and provides organic milk to Organic West, under Keystone Dairy's organic certification.

39. At or around the same time of American AG's formation for the purpose of taking over Keystone Dairy, Woodie, was negotiating with Leonard Vandenberg, the President and co-founder of Organic West, a competitor of Horizon, about opening an organic dairy on land that Woodie owned in Ochiltree County, Texas.

40. Dietrich participated in that discussion, which included negotiations about the pricing for organic milk and other purchase agreement terms.

41. On or about November 7, 2014, Woodie presented to Green, and Green thereafter signed on behalf of American AG, the organic milk purchase agreement that Woodie and Dietrich had negotiated with Organic West. Under the American AG-Organic West contract, American AG agreed to sell all of the organic milk it produces to Organic West at a higher price than Horizon was paying to Keystone Dairy/Dietrich. That contract also provides American AG with certain other quality premiums.

42. The American AG-Organic West contract also provides that "[p]revious commitments with prior buyer(s) must be honored and respected to and with the terms of the prior contract, before shipping to Organic West Milk, unless authorized agreement has been made."

43. That one-year contract, with an automatic annual renewal, or "continuous evergreen" provision, was effective November 26, 2014.

44. On November 26, 2014, just three weeks after Dietrich and Woodie negotiated the organic milk supply contract between American AG and Organic West, and the exact date on which that contract became effective, Dietrich sent a letter to Horizon's Vice-President of Milk

Procurement, referencing the MPA and stating: "I wish to cancel this agreement on account of our sale of the dairy business and its livestock. I would appreciate if it is done with effective date of December 1, 2014. The new owners will take full possession effective this date."

45. Dietrich knew that American AG would be selling its organic milk to Organic West before he notified Horizon of his intention to terminate the Dietrich MPA on November 26, 2014. Moreover, under its agreement with Organic West, American AG committed to sell organic milk that was already committed to Horizon under the Dietrich MPA.

46. Dietrich did not sell his dairy business or the livestock associated with it.

47. Over the next two days, Dietrich spoke with Vandenburg and told him that he had made a verbal agreement to "sell" Keystone Dairy's cows and dairy facilities to American AG. Dietrich also advised that American AG's first shipment of milk to Organic West was scheduled for December 1, 2014.

48. In that same telephone call, and before American AG's first shipment of organic milk to Organic West, Dietrich told Vandenburg that he previously had a contract to sell Keystone Dairy's organic milk production to Horizon, but that he had terminated it.

49. Thereafter, in December 2014, upon Vandenburg's request, Dietrich faxed a copy of the Dietrich MPA to Organic West.

50. The Dietrich MPA includes a confidentiality and nondisclosure clause, under which Dietrich agreed "to keep this information confidential" and that he would "not disclose any such information without the other party's written consent." Dietrich further acknowledged that his unauthorized disclosure of the Horizon contract would cause irreparable harm.

51. Dietrich never sought nor requested permission to disclose the Dietrich MPA to Organic West, nor did Horizon ever consent or agree to its disclosure.

52. In any event, upon receipt of the Dietrich MPA, Organic West knew that it included a five-year term, that Dietrich had no contractual right to terminate it before January 15, 2019, and that Dietrich's termination on November 26, 2014 was a breach of its terms.

53. No representative of Organic West ever questioned Dietrich about the validity of his contract termination, nor did Organic West take any steps to ensure that all of Dietrich's prior commitments to Horizon under that MPA had been fulfilled.

54. Horizon never accepted, consented to, or approved cancellation or termination of the Dietrich MPA, nor did it agree to release Dietrich from his MPA.

55. Dietrich did not return calls from Horizon, and Horizon's tanker truck was turned away when it attempted to make its scheduled milk pickup at Keystone Dairy on December 1, 2014.

56. On that same day, however, Organic West picked up its first delivery of organic milk from American AG, at the Keystone Dairy.

57. Two weeks later, on December 15, 2014, Green signed a Dairy Herd Lease with Sunshine Heifers, with a lease start date of December 7, 2014. Woodie facilitated that lease.

58. Dietrich had actual knowledge of the terms of his MPA with Horizon, as did his wife who was, upon information and belief, involved with Keystone Dairy's operations.

59. Woodie also knew, or should have known, of the terms of the Dietrich MPA before and during his negotiations with Organic West, and when he presented the Organic West contract to Green. Woodie previously had an MPA with Horizon, and he knew that Horizon would only agree to release him from that contract because Dietrich executed his own.

60. Notwithstanding Organic West's knowledge of the Dietrich MPA, its five-year term, and the fact that Dietrich could not terminate it at-will, Organic West continued, and continues, to receive shipments of organic milk from American AG.

61. Through these actions, Dietrich continues to manage and produce organic milk from the same leased cows in the same leased dairy facility that he used to perform under his MPA with Horizon. He is simply selling that same milk to Organic West.

62. As a result, the organic milk that Organic West is purchasing from American AG is the organic milk that Horizon would have purchased under the Dietrich MPA.

63. Given the terms of the Dietrich MPA to which Dietrich agreed, it was Dietrich's intent to sell organic milk to Horizon through July 15, 2019, absent Organic West's and Woodie's intentional interference with that contract.

### E. Horizon's Past and Future Monetary Losses

64. Horizon has lost, and will continue to lose, significant profits as a result of Defendants' interference with, and the breach of, the Dietrich MPA.

65. Horizon had the capacity to hold and process, and the customers and market to sell, the organic milk it would have purchased under the Dietrich MPA.

66. Because there were and are an insufficient number of producers, Horizon's capacity and customers for organic milk exceed its supply of organic milk. Accordingly, Horizon would have earned a profit on each gallon of milk it would have purchased from the Dietrichs and Keystone Dairy.

67. Horizon estimates that its lost profits from Defendants' interference with, and breach of, the Dietrich MPA, will total in the millions of dollars over its intended five-year life.

## FIRST CLAIM FOR RELIEF

**Tortious Interference with Business Relations**
**(Organic West and Woodie)**

68. Horizon re-alleges and incorporates by reference all prior paragraphs and allegations as though fully set forth herein.

69. Horizon and Dietrich entered into the MPA, which is a valid and enforceable contract for the purchase of organic milk. Dietrich did not have the right to terminate the MPA with Horizon in November 2014.

70. Woodie knew, or should have known, of the Dietrich MPA, and its terms, because Woodie previously had a similar contract with Horizon, and Horizon made it clear to Woodie that it would release him from that contract only if Dietrich entered one with Horizon in its place.

71. Organic West knew of the Dietrich MPA through its discussions with Woodie and Dietrich in November 2014 - before Dietrich terminated his contract with Horizon - and because Organic West had a copy of the contract before the first shipment of delivery from American AG to Organic West.

72. Furthermore, Organic West's own contract with Dietrich/Keystone Dairy expressly prohibited the supply of organic milk until such time as Dietrich complied fully with his MPA with Horizon.

73. Organic West intentionally ignored and/or disregarded its knowledge of the Dietrich MPA and the requirements of its own contract.

74. Mrs. Dietrich knew of the Dietrich MPA and its terms through her participation in Keystone Dairy. Mrs. Dietrich also knew that American AG simply assumed Keystone Dairy's operations while the MPA with Horizon was in full force and effect.

75. American AG knew of the Dietrich MPA through the knowledge of its owner, Mrs. Dietrich, and Dietrich, its manager and her husband.

76. Green knew of the Dietrich MPA because Dietrich advised him of its existence. Green further knew that American AG simply assumed Keystone Dairy's operations while the MPA with Horizon was in full force and effect.

77. Defendants willfully and intentionally interfered with the Dietrich MPA by inducing Dietrich to breach it. Defendants knew that the Dietrich MPA was in full force and effect, and that Dietrich did not have a right to terminate the contract in November 2014.

78. Defendants further interfered with the Dietrich MPA and facilitated its breach through their participation, structure and assistance in American AG's assumption of Keystone Dairy's operations.

79. Defendants' willful and intentional interference with the Dietrich MPA has proximately caused damages to Horizon, as Horizon has lost substantial sales in the marketplace of the organic milk it would have purchased under the MPA.

80. Horizon has suffered actual damages as a result of Defendants' tortious interference through the loss of profits since December 2014 through the present, and continuing until July 2019, in an amount to be proven at trial.

<b><u>SECOND CLAIM FOR RELIEF</u></b>

**Breach of Contract**
**(Woodie)**

81. Horizon re-alleges and incorporates by reference all prior paragraphs and allegations as though fully set forth herein.

82. On August 1, 2014, Woodie and Horizon entered into a valid contract, the Release, which is a valid and enforceable contract.

83. Woodie breached the Release by failing to pay the $105,600 dollars due and owing in repayment of the Start-up Advances Horizon paid him in 2012.

84. On January 9, 2015, Horizon served Woodie with a copy of the Release and demand for payment of $105,600.00 by Certified Mail.

85. Woodie did not make the required payment or respond to Horizon's demand in any way, and on January 20, 2015 Horizon served him with an identical demand for payment of $105,600.00 by Certified Mail.

86. To date, Woodie has neither made the required payment nor contested that he owes Horizon the requested sum under the Release.

87. Upon information and belief, Woodie also breached the Release by discussing an exclusive organic milk agreement with Organic West, as the Release provides Horizon with a valid and enforceable right of first refusal to purchase any organic milk produced by Woodie within 600 miles of Keystone Dairy until October 2017.

88. Horizon has been injured by Woodie's breach of the Release.

89. Horizon's damages include the $105,600.00 owed to Horizon under the Release. If Woodie has breached the right of first refusal, Horizon is further damaged through the violation of its right of first refusal, in an amount to be proven at trial.

90. Pursuant to Tex. Civ. Prac. & Rem. Code Ann. § 38.001, Horizon seeks recovery of its attorney fees for this breach of contract claim.

### THIRD CLAIM FOR RELIEF

**Civil Conspiracy**
**(Organic West and Woodie)**

91. Horizon re-alleges and incorporates by reference all prior paragraphs and allegations as though fully set forth herein.

92. Defendants knew of the contract between Dietrich and Horizon, and that the contract was in full force and effect.

93. Defendants further knew that Dietrich did not have a right to terminate the contract in November 2014.

94. Defendants conspired to cause a breach of the Dietrich MPA.

95. Defendants took one or more acts in furtherance of their unlawful conspiracy, including but not limited to: forming American AG, transferring Keystone Dairy's assets and operations to American AG, negotiating the Organic West milk supply agreement with American AG, and selling American AG's organic milk to Organic West.

96. Horizon was damaged through Defendants' conspiracy, as it has been denied the ability to purchase the organic milk provided under the Dietrich MPA.

97. Horizon has suffered actual damages in the amount of past and future lost sales and resulting lost profits in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that this Court enter judgment in Horizon's favor, and against Defendants, on the claims for relief set forth above, and award relief to Horizon as follows:

A. Compensatory damages in its favor on Claims One, Two and Three;

B. Reasonable attorney's fees in its favor on Claim Two;

C. Pre-judgment and post-judgment interest to the extent allowed by law;

D. Costs and attorney's fees to the extent permitted by law; and,

E. Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Horizon demands a trial by jury on all claims for which a jury trial is authorized.

Plaintiff's Address

Horizon Organic Dairy, LLC
12002 Airport Way
Broomfield, CO 80021

    DATED this 14th day of April, 2015.

        Respectfully submitted,

        RINEY & MAYFIELD LLP
          Thomas C. Riney – TBN 16935100
          triney@rineymayfield.com
          W. Heath Hendricks – TBN 24055651
          hhendricks@rineymayfield.com
        320 South Polk Street – Suite 600
        Maxor Building
        Amarillo, Texas 79101
        (806) 468-3200; Fax (806) 376-4509


        By     /s/ Thomas C. Riney
              Thomas C. Riney

*ATTORNEYS FOR PLAINTIFF*
*HORIZON ORGANIC DAIRY, LLC*